VENABLE LLP
William J. Briggs, II (*Pro Hac Vice* Pending)
Email: wjbriggs@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

STOEL RIVES LLP
David R. Goodnight (SBN 20286)
Email: drgoodnight@stoel.com
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 386-7586
Facsimile: (206) 386-7500

Attorneys for Non-Party
Earvin "Magic" Johnson

**U.S. DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF WASHINGTON**

UNITED STATES OF AMERICA,

Plaintiff,

v.

THOMPSON, et al.,

Defendants.

CASE NO.: 2:16-CR-0145-TOR

*Hon. Thomas O. Rice*

**NON-PARTY EARVIN "MAGIC" JOHNSON'S NOTICE OF MOTION AND MOTION TO QUASH TRIAL SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: October 5, 2017
Time: 9:00 a.m.
Courtroom: 902

Trial Date: October 16, 2017

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on **October 5, 2017**, at **9:00 a.m.**, or as soon thereafter as the matter may be heard in Courtroom 902 of the above-entitled Court, located at 920 West Riverside Avenue, Spokane, Washington 99201, Earvin "Magic" Johnson ("Mr. Johnson") will and hereby does move the Court to quash the subpoena for Mr. Johnson's testimony at trial served by criminal defendant Vassily Anthony Thompson ("Mr. Thompson").

This Motion is made pursuant to Federal Rule of Criminal Procedure 47, Local Civil Rule 7.1, and Local Criminal Rule 12 on the grounds that Mr. Johnson possesses no information that is either material to the criminal charges pending against Mr. Thompson or favorable to his defense. Mr. Johnson therefore should not be compelled to testify at Mr. Thompson's trial.

The Motion is based on this Notice of Motion; the Memorandum of Points and Authorities filed herewith; the accompanying Declarations of Natalie Wilson, Michael S. Gould, and Earvin "Magic" Johnson; all papers on file herein; and such other evidence and argument as the Court may allow in connection with the hearing on the Motion.

Dated: September 29, 2017

VENABLE LLP

By: s/William J. Briggs, II

William J. Briggs, II, *Pro Hac Vice Pending*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901
Email: wjbriggs@venable.com

STOEL RIVES LLP

By: s/David R. Goodnight

David R. Goodnight, SBN 20286
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 386-7586
Facsimile: (206) 386-7500
Email: drgoodnight@stoel.com

Attorneys for Non-Party
Earvin “Magic” Johnson

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

ARGUMENT .......... 5

I. THE SUBPOENA SHOULD BE QUASHED BECAUSE MR. JOHNSON POSSESSES NO MATERIAL INFORMATION THAT IS FAVORABLE TO THE DEFENSE .......... 7

A. Mr. Johnson Had No Direct Involvement With The Tournament Or Any Of Its Representatives .......... 7

B. Any Knowledge That Mr. Johnson Has Related To The Tournament Has No Bearing On The Criminal Charges At Issue .......... 9

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*United States v. Campbell*
874 F.2d 838 (1st Cir. 1989) ........ 6

*United States v. Ginsberg*
758 F.2d 823 (2d Cir. 1985) ........ 6

*United States v. North*
910 F.2d 843 (D.C. Cir. 1990) ........ 6

*United States v. Valenzuela-Bernal*
458 U.S. 858 (1982) ........ 5, 6, 7, 9

**Rules**

Fed. R. Evid. 401 ........ 6, 9

**Other Authorities**

U.S. CONST. amend. VI ........ 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

In August 2016, Vassily Anthony Thompson ("Mr. Thompson"), Derrick John Fincher ("Mr. Fincher"), and John Patrick Nixon ("Mr. Nixon") (collectively, "Defendants") were indicted on criminal charges for conspiracy to commit wire fraud, wire fraud, and aggravated identity theft. Defendants allegedly defrauded multiple parties, including the organizers of a 2012 celebrity golf tournament, with their promises of loans in exchange for an advance payment. Before Defendants initiated their alleged scam to steal from the organizers of the golf tournament, Earvin "Magic" Johnson ("Mr. Johnson"), through his Executive Assistant Natalie Wilson ("Ms. Wilson"), had agreed to host the event. The tournament, however, never received the promised funding, and the criminal charges against Defendants followed.

Mr. Thompson now wishes to compel Mr. Johnson to testify at the trial, pointing to Mr. Johnson's signature on a contract and photograph in a brochure, (which Mr. Johnson never agreed to), as some sort of proof that Mr. Johnson possesses information relevant to the charges pending against him. But, Mr. Johnson has no knowledge of the circumstances surrounding the cancellation of the tournament or its lack of funding. In fact, Mr. Johnson never even communicated with the organizers of the tournament. Ms. Wilson, his Executive Assistant, conducted all of the negotiations leading up to the signing of the contract, and it

was Ms. Wilson who was later informed that the tournament had been cancelled because sponsors had withdrawn.

Still, Mr. Thompson chose to serve a subpoena on Mr. Johnson for his testimony at the criminal trial. This is nothing more than a transparent attempt to shift the focus from the serious charges pending against Mr. Thompson to the inevitable media frenzy that would result from Mr. Johnson's appearance in the courtroom. Mr. Thompson intends to use Mr. Johnson's celebrity status to his advantage by diverting the jury's attention to Mr. Johnson, knowing that Mr. Johnson's testimony would have no impact whatsoever on his case.

Mr. Thompson cannot be permitted to drag Mr. Johnson into court in order to create a media circus when Mr. Johnson has no material information to offer. Thus, the Court should grant Mr. Johnson's motion to quash the subpoena for his testimony.

## STATEMENT OF FACTS

The underlying action in this matter concerns criminal charges of conspiracy to commit wire fraud, wire fraud, and aggravated identity theft. ECF No. 146 at 1-2, ¶ 1. Defendants are accused of conspiring to offer, and offering, false and fictitious loans to various parties in Idaho, Montana, and North Carolina. *Id*. Defendants allegedly pocketed the fees that they charged in advance for credit lines that never materialized. *Id*.

One of the fraudulent loans relates to funding for a celebrity golf tournament

that was to take place in Coeur D'Alene, Idaho in August 2012. *Id*. at 2, ¶ 2. According to the Indictment, Defendants learned that the tournament needed funding and offered to provide a line of credit in exchange for a fee in May 2012. *Id*. at 2-3, ¶¶ 3-5. Defendants allegedly failed to provide the line of credit and refused to return the payment to the organizers of the tournament. *Id*. at 4, ¶ 11.

In April 2012, before Defendants offered the fraudulent loan to the organizers of the tournament, Patti Ziebell ("Ms. Ziebell") of The Dream Team Concierge, LLC ("The Dream Team Concierge"), reached out to Mr. Johnson's Executive Assistant, Ms. Wilson, to inquire about having Mr. Johnson host the tournament. *Id*. at 3, ¶ 5; Declaration of Natalie Wilson ("Wilson Decl.") at 2, ¶ 4. Ms. Wilson informed Ms. Ziebel of the terms for Mr. Johnson's appearance, including the $750,000.00 appearance fee, and Ms. Ziebell agreed. *Id*. at 2, ¶ 5. Ms. Wilson then discussed the opportunity with Mr. Johnson, confirmed his willingness to appear, and proceeded to work out the details and finalize the contract with Ms. Ziebell. *Id*. at 2-3, ¶¶ 6-7. The terms required a deposit of one-half of the total contract price, $778,600.00 including the appearance and transportation fees, at the time of signing. *Id*. at 3, ¶ 8. The balance was to be paid one week prior to the tournament. *Id*.

As part of the negotiations, Ms. Wilson informed Ms. Ziebell that Mr. Johnson's office must approve all documents and/or other materials with Mr. Johnson's name, image, and/or likeness before distribution. *Id*. at 2-3, ¶ 7.

Ms. Wilson presented Mr. Johnson with the final contract, which he signed on or about April 25, 2012. *Id*. at 3, ¶ 9; Declaration of Earvin "Magic" Johnson ("Johnson Decl.") at 2, ¶ 3. Ms. Wilson presented the signed contract to Ms. Ziebell, and Ms. Ziebell paid a deposit of $100,000.00 to Magic Johnson Enterprises on or about May 11, 2012, in spite of the fact that it was less than the agreed-upon amount and paid after the signing date. Wilson Decl. at 3, ¶¶ 9-10.

Ms. Wilson communicated infrequently with Ms. Ziebell after submitting the signed contract, until approximately July 13, 2012, when Ms. Ziebell notified Ms. Wilson that the tournament had been cancelled because certain sponsors had withdrawn. *Id*. at 3, ¶ 11.

Ms. Wilson then informed Mr. Johnson that the tournament had been cancelled due to lack of funding. Johnson Decl. at 2, ¶ 5. Ms. Wilson also informed Michael Gould ("Mr. Gould"), Counsel for Mr. Johnson and Magic Johnson Enterprises, so that he could contact Ms. Ziebell to attempt to resolve the breach of the contract. Declaration of Michael S. Gould ("Gould Decl.") at 2 ¶¶ 3-4. Mr. Gould never communicated with any of the organizers, sponsors, guests, or other participants in the tournament before The Dream Team Concierge breached the contract. Gould Decl. at 2, ¶ 5.

Mr. Johnson never communicated with any of the organizers, sponsors, guests, or other participants in the tournament about any matter related to his appearance at, or the cancellation of, the tournament. Wilson Decl. at 3, ¶ 12;

Johnson Decl. at 2, ¶ 6; Gould Decl. at 2 ¶ 6. Nor does Mr. Johnson have any knowledge of the circumstances surrounding the cancellation of the tournament beyond what he learned from Ms. Wilson – that the event was cancelled due to lack of funding. Johnson Decl. at 2, ¶ 5.

Still, Mr. Thompson chose to serve a subpoena for trial testimony on Mr. Johnson just a few weeks before the first day of the trial, which begins on October 16, 2017. ECF No. 29 at 3, ¶ 5.

**ARGUMENT**

A criminal defendant's constitutional right to compel witnesses to testify on his behalf is not absolute. *See* U.S. CONST. amend. VI (granting a criminal defendant the right "to have compulsory process for obtaining witnesses *in his favor*) (emphasis added); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 866 (1982). Courts have imposed further limitations by requiring a defendant invoking this right to demonstrate how the testimony sought would be material and favorable to his defense. *See Valenzuela-Bernal*, 458 U.S. at 867 (holding that deprivation of testimony is not sufficient to establish violation of right to compulsory process if defendant cannot "at least make some plausible showing of how [the] testimony would have been both material and favorable to his defense").

Thus, in the absence of an explicit test governing motions to quash subpoenas for trial testimony in criminal cases, courts grant motions to quash when a defendant fails to meet the standard articulated in *Valenzuela-Bernal*. *See United*

*States v. Ginsberg*, 758 F.2d 823, 831 (2d Cir. 1985) (finding no violation of rights to due process of law or compulsory process where defendant failed to show that testimony from deported witnesses would have been "helpful and material"); *United States v. Campbell*, 874 F.2d 838, 850 (1st Cir. 1989) (granting motion to quash defendant's subpoena of government informant where defendant "failed to make a sufficient showing of how [the witness's] testimony would be favorable and material to his case"); *United States v. North*, 910 F.2d 843, 891 (D.C. Cir. 1990), *superseded on other grounds*, 920 F.2d 940 (D.C. Cir. 1990) (granting motion to quash subpoena where defendant presented no evidence that the testimony of then-President Reagan would have been either "material or favorable").

In *Valenzuela-Bernal*, the Court likened the standard to the Federal Rule of Evidence governing the test for relevancy, which states that evidence is relevant when it "has any tendency to make a fact more or less probable," and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see Valenzuela-Bernal*, 458 U.S. at 874 (holding that a criminal defendant cannot compel a witness to testify pursuant to his Sixth Amendment right when he cannot demonstrate "a reasonable likelihood that the testimony [would affect] the judgment of the trier of fact").

Accordingly, the Court may grant a motion to quash a subpoena for trial testimony in a criminal case where a defendant fails to demonstrate that the

testimony sought would be either material or favorable to his defense such that it would affect the outcome of his case. *See North*, 910 F.2d at 889.

## I. <u>THE SUBPOENA SHOULD BE QUASHED BECAUSE MR. JOHNSON POSSESSES NO MATERIAL INFORMATION THAT IS FAVORABLE TO THE DEFENSE</u>

Here, no proffer from Mr. Thompson can overcome Mr. Johnson's lack of relevant and material knowledge regarding the criminal charges pending against Mr. Thompson and his related conduct.

Presumably, Mr. Thompson seeks testimony from Mr. Johnson regarding the financial circumstances surrounding the cancellation of the golf tournament that he had agreed to host. However, Mr. Johnson had no direct interaction with the organizers of the tournament, and the little information that he has related to this case (if any) would have no effect on the outcome of the trial.

### A. <u>Mr. Johnson Had No Direct Involvement With The Tournament Or Any Of Its Representatives</u>

Mr. Thompson can only haul into court witnesses with material and favorable testimony. *See Valenzuela-Bernal*, 458 U.S. at 868. Mr. Johnson can provide neither, as he had no direct involvement with the organizers of the tournament relevant to these proceedings. Mr. Johnson's only knowledge of the tournament came from his Executive Assistant, Ms. Wilson, who conducted all of the negotiations with Ms. Ziebell related to Mr. Johnson's appearance. Johnson

Decl. at 2, ¶ 6. Ms. Wilson acted as the intermediary between Ms. Ziebell and Mr. Johnson in all communications related to the tournament, from the initial point of contact to after the contract had been breached. *Id.*; Wilson Decl. at 2-3, ¶¶ 7-11.

Indeed, Ms. Wilson limited the information about the tournament that she shared with Mr. Johnson in consideration of his busy schedule and many engagements. Wilson Decl. at 2-3, ¶¶ 6-9. Ms. Wilson simply confirmed the terms of the contract for the appearance with Mr. Johnson and later informed him that the event was cancelled due to a lack of funding. *Id*. at 2-3, ¶¶ 6-11.

Mr. Johnson therefore can offer neither material nor favorable testimony. He never communicated with any of the organizers, sponsors, guests, or other participants in the tournament about any matter related to his appearance at, or the cancellation of, the tournament. *Id*. at 3, ¶ 12; Johnson Decl. at 2, ¶ 6; Gould Decl. at 2 ¶ 6. Thus, Mr. Johnson has no further information to offer related to the funding, or lack thereof, for the tournament. Given Mr. Johnson's distance from the negotiation process and the cancellation of the event, Mr. Thompson cannot demonstrate that Mr. Johnson would be the proper witness for information related to his hosting engagement. Accordingly, Mr. Johnson should not be compelled to testify.

**B. <u>Any Knowledge That Mr. Johnson Has Related To The Tournament Has No Bearing On The Criminal Charges At Issue</u>**

Even if Mr. Johnson possesses knowledge related to the tournament (which he does not), it would have no effect on the outcome of the case or on the jury's finding of guilt and is therefore insufficient to compel his testimony.

Evidence is material for purposes of the Sixth Amendment when it might affect the outcome of the trial, and, specifically, the finding of guilt. *See Valenzuela-Bernal*, 458 U.S. at 868 (citing *Moore v. Illinois*, 408 U.S. 786 (1972)). Similarly, under the Federal Rules of Evidence, evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401.

Mr. Johnson's knowledge is neither material nor relevant. Indeed, it is limited to the terms of his agreement to host and the little information Ms. Wilson gave him after the tournament had been cancelled. Wilson Decl. at 2-3, ¶¶ 6-11; Johnson Decl. at 2, ¶¶ 3-6. Ms. Wilson merely told Mr. Johnson that the tournament had been cancelled due to lack of funding after learning from Ms. Ziebell that sponsors had withdrawn. *Id*. at 3, ¶ 11; Johnson Decl. at 2, ¶5.

Ms. Ziebell did not give Ms. Wilson any specific information related to the source of the funds. Ms. Wilson was never told about Defendants, the credit line that they offered for the tournament, or their individual failure to provide the funding. Testimony from Mr. Johnson that he was told – in no specific terms –

that the organizers of the tournament failed to secure funding is not pertinent to Mr. Thompson's guilt or innocence. Nor does it make Mr. Thompson's involvement in the scheme to defraud the organizers of the tournament even slightly more or less probable pursuant to the test for relevancy under the Federal Rules of Evidence.

Neither Mr. Johnson nor Ms. Wilson were given any further information about the circumstances surrounding the tournament's financial failure. Thus, Mr. Johnson should not be compelled to testify when he has no material information to offer.

## **CONCLUSION**

Mr. Thompson attempts to distract from the serious charges pending against him with the spectacle of a media circus by serving Mr. Johnson with a subpoena, but he cannot show how Mr. Johnson's testimony would have any impact on the outcome of his case. Mr. Thompson could not make such a showing when Mr. Johnson has no knowledge of material or relevant information. Mr. Johnson therefore respectfully requests that the Court grant the Motion and quash the subpoena.

Dated: September 29, 2017

VENABLE LLP

By: s/William J. Briggs, II

William J. Briggs, II, *Pro Hac Vice Pending*
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901
Email: wjbriggs@venable.com

STOEL RIVES LLP

By: s/David R. Goodnight

David R. Goodnight, SBN 20286
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 386-7586
Facsimile: (206) 386-7500
Email: drgoodnight@stoel.com

Attorneys for Non-Party
Earvin "Magic" Johnson

**PROOF OF SERVICE**

I hereby certify that on this 29th day of September, 2017, a copy of the foregoing was filed via the Court's CM/ECF system and delivered to all parties of record who have consented to service via the Court's CM/ECF system. I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Joseph Harrington – Acting United States Attorney
Scott T. Jones, Assistant United States Attorney
Eastern District of Washington
P.O. Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

Dated: September 29, 2017

s/David R. Goodnight

David R. Goodnight, WSBA 20286
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 386-7586
Facsimile: (206) 386-7500
Email: drgoodnight@stoel.com

Attorneys for Non-Party
Earvin "Magic" Johnson