**DAVID R. PARTOVI**
PARTOVI LAW, P.S.
900 N. Maple, Lower Level
Spokane, WA 99201
Phone (509) 270-2141
Fax (509) 326-6102
partovilaw@gmail.com
Attorney for Thompson

HONORABLE THOMAS O. RICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>-vs-<br><br>THOMPSON & FINCHER,<br>Defendants. | NO 2:16-CR-0145-TOR-1<br><br>THOMPSON'S RESPONSE TO NON-PARTY EARVIN JOHNSON'S MOTION TO QUASH TRIAL SUBPOENA & AMENDED MOTION FOR TRIAL SUBPOENA |

## I. FACTUAL BACKGROUND

First, it is important for the record to clearly reflect and the Court to know certain facts giving rise to this motion. Mr. Johnson was never served with a subpoena. A courtesy copy of what was being sought from the Court was emailed to Mr. Johnson's lawyers in email correspondence September 19 through 21. (attached as exhibit) I reached out prior to that date, but was ignored and I had to do something. My staff thought this was service of a trial subpoena but I clearly intervened and told Mr. Gould and Mr. Briggs that this was a courtesy copy and the subpoena was being sought *ex parte*. I made it clear that I just needed to know what Mr. Johnson's involvement was in order to determine the materiality of his testimony. When I was given none, I included Mr. Johnson in my request. Now, with the filings this past Friday (ECF 174-178) I have some

idea what the evidence is. I agree with Mr. Briggs that Mr. Johnson's testimony is less material than that of Natalie Wilson and I ask the Court to issue a trial subpoena for Ms. Wilson for the specific reasons set forth herein.

## II. RESPONSE TO MOTION TO QUASH

The problem with just reading the indictment in this case is that it tells only half of the story. Mr. Thompson needs the Court to intervene so that he can tell his half. That is what this motion – and all of those motions currently pending – are all about. At the time of trial, the evidence regarding the financing of just the Coeur d'Alene transaction will show the following:

Patty Ziebell (Ziebell) and her partners, Cody and Luke Schuler and Derek Mulgrew, sought financing to put on a celebrity golf tournament which required a substantial and non-traditional funding source. Securing such funding requires relationships with high net-worth individuals. The Coeur d'Alene transaction was for $6M USD, for example. Non-traditional sources of $6M USD don't grow on trees.

Derrick Fincher was brought in to help the group finance this transaction and, in turn, brought in V. Anthony Thompson. Mr. Thompson knows Thomas Cole, III who knew Anthony Kirkland of Exemious Holdings who knew Chris Cioffi of Gulf Atlantic Traders who knew an unknown individual with the ability to show a balance sheet of some $400M USD. That balance sheet was not even the source of the funding, but was sought as potential collateral against which to secure financing.

When Mr. Mulgrew put $160,000 in support of this transaction, he did not give it to V. Anthony Thompson and it was not "pocketed" in a fraud scheme. The money went to the trust account of Atlanta, GA attorney Leonard Medley. Medley held onto the money while V. Anthony Thompson flew to Atlanta and met with Anthony Kirkland of Exemious Holdings and Mr. Kirkland's partner, Nicholas

Aaron. Mr. Thompson and Mr. Kirkland ultimately entered into a contract called a "facilitator agreement" whereby Mr. Kirkland would facilitate financing for Mr. Thompson in exchange for a fee.

The first part of Mr. Kirkland's performance under the facilitator agreement was to bring in Chris Cioffi with "show money." This is for the purpose of legitimizing the capability to obtain collateral against which to seek financing. Mr. Cioffi caused his bank, Branch Bank & Trust, to issue a non-callable pre-advice in the amount of $23.5M USD. The government just sortof calls all of this "false" and "fraudulent" but each and every single factual allegation in the previous 3 paragraphs came from an audiotaped interview between Anthony Kirkland with his lawyer and SA Barker with AUSA Aine Ahmed. The *government's* evidence shows the above.

For the financing work outlined above, Atlanta attorney Leonard Medley sent Atlanta attorney DeWayne Martin, for the benefit of Exemious Holdings, $100,000 of Mulgrew's money. Mr. Thompson paid the entire $3,000 escrow fee out of his $50,000 fee and took an additional $10,000 that went to Thomas Cole, III for making the introduction to Exemious. DeWayne Martin further distributed the $100.000 from his trust account to Kirkland, Aaron, ASM Holdings which was Ali Muhammad and Chris Cioffi. In other words, it wasn't fraud and these parties put Ziebell one step closer to her dream by securing the ability to show up to $23.5M USD potentially available as collateral if Ziebell could put together a golf tournament. She couldn't and that is why she did not get her funding. There was no fraud.

Now, for the first time with the declarations of Natalie Wilson and Michael Gould, the Ziebell part of the Coeur d'Alene deal is coming into focus. As their declarations make clear, the Coeur d'Alene "golf tournament had been cancelled because certain sponsors had withdrawn." Natalie Wilson dec p3:14.

It was never V. Anthony Thompson's role or Derrick Fincher's role to arrange for sponsors. They were only on the side of financing and they had $23.5M USD ready to monetize if they could get Chris Cioffi persuaded that there was money to be made by reserving that collateral. Ziebell, however, did not have Magic Johnson, she did not have ABC Sports, she did not have rock bank Alabama, she did not have Hagadone Corporation for a golf course and she did not have a concert venue. All of these were needed in order to secure financing and all were Ziebell's responsibility.

When Mr. Thompson realized this, he issued Ziebell and her partners a "demand for performance" which was provided to me by the government. It demands that she perform her specific and enumerated parts of their joint venture agreement. Because she was unable to secure these players, there was no underlying transaction to finance and Mr. Thompson went to work finding other, more serious investors to utilize the potential $23.5M USD in collateral. That was to be Montana Film Studios and is not pertinent here.

There are two crucial facts that the jury in this matter needs to know from Natalie Wilson: 1). Ziebell paid Magic Johnson Enterprises only $100,000 of the $389,300 she apparently contracted to pay and 2). On or about July 13, 2012, Ms. Ziebell told Ms. Wilson that the golf tournament had been cancelled because certain sponsors had withdrawn.

## III. CONCLUSION & AMENDED MOTION

Mr. Johnson's counsel is prone to exaggerated claims such as, "This is nothing more than a transparent attempt to shift the focus from the serious charges pending against Mr. Thompson to the inevitable media frenzy that would result from Mr. Johnson's appearance in the courtroom." Memo of Points and Authorities, p2:5-9. He then comes back to, "Presumably, Mr. Thompson seeks testimony from Mr. Johnson regarding the financial circumstances surrounding the

cancellation of the golf tournament that he had agreed to host." *Id.*, p7:11-14. Clearly, it is the latter and apparently the witness with personal knowledge is Natalie Wilson.

Mr. Thompson needs this testimony to show the jury it was Ziebell's inability to meet her contractual obligations to Mr. Johnson and her failure to arrange for the tournament's sponsors that stalled the golf tournament. Those two pieces of evidence are not otherwise available to Mr. Thompson and are necessary to refute the government's assertions of fraud. Those two pieces of evidence, along with the financing clearly arranged for with Exemious Holdings tend to show it was Ziebell, not Thompson or Fincher, that ruined the Coeur d'Alene transaction. Mr. Thompson respectfully requests the Court issue a subpoena to Ms. Wilson rather than Mr. Johnson.

I declare the foregoing to be true and correct to the best of my knowledge under penalty of perjury.

DATED this 2nd day of October, 2017

**PARTOVI LAW, P.S.**

*/s/ David R. Partovi*
DAVID R. PARTOVI, WSBA #30611
Attorney for Defendant Thompson

CERTIFICATION

I hereby certify that on 2nd day of October, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following, and/or I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Scott T. Jones,
Steve Frampton

David R. Goodnight
Stoel Rives, LLP
600 University Street
Seattle, WA 98101
(206) 386-7586
(206) 386-7500 fax
drgoodnight@stoel.com

William J. Briggs
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 229-9900
(310) 229-9901 fax
wjbriggs@venable.com

**PARTOVI LAW, P.S.**

s/ *David R. Partovi*
DAVID R. PARTOVI, WSBA #30611
Attorney for Defendant