UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VASSILY ANTHONY THOMPSON,<br><br>Defendant. | NO. 2:16-CR-0145-TOR-1<br><br>ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE |

BEFORE THE COURT are Defendant's Motion for Sentence Reduction and Motion to Expedite. ECF Nos. 474, 476. These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein, the completed briefing, and is fully informed. For the reasons discussed below, Defendant's Motion to Reduce Sentence, ECF No. 474, is denied.

## BACKGROUND

On February 9, 2018, Vassily A. Thompson was found guilty by jury verdict of one count of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 1343, 1349. ECF No. 326. On September 7, 2018, this Court sentenced Defendant

ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE ~ 1

1  to a 108-month term of imprisonment, followed by a 3-year term of supervised
2  release, and a $2,015,000.00 order of restitution.  ECF No. 409.  Defendant was
3  detained for a period of time pretrial for violating the conditions of his release
4  (ECF No. 219) and after trial he was remanded to the custody of the United States
5  Marshal pending sentence (ECF No. 325).  Defendant's projected good time credit
6  release date is July 10, 2025.

7      On April 7, 2020, Defendant requested a sentence reduction from the Bureau
8  of Prisons.  ECF Nos. 474 at 13; 474-1 at 59; 477 at 2-3; and 477-1 at 14 (request
9  dated April 3, denial by Warden on April 10, 2020).

10      On May 12, 2020, Defendant filed the instant Motion for Sentence
11  Reduction.  ECF No. 474.  Defendant argues that he presents extraordinary and
12  compelling reasons to convert his remaining sentence to home confinement, that he
13  is 67 years old, has Stage IV metastatic prostate cancer and suffers from asthma
14  and chronic obstructive pulmonary disease (COPD).  *Id*. at 2-4.  Defendant
15  contends that he will present no danger to society as he can be barred from opening
16  financial accounts or credit lines that would allow any type of activity akin to his
17  offense.  *Id*. at 19.

18      Defendant's conviction is currently on appeal in the Ninth Circuit Court of
19  Appeals.  See ECF Nos. 418, 473.

20

## DISCUSSION

### A. Eligibility for Compassionate Release

Federal courts have the statutory authority to modify an imposed term of imprisonment for two reasons: compassionate release under 18 U.S.C. § 3582(c)(1) or based on a change in the sentencing guidelines under 18 U.S.C. § 3582(c)(2). Until recently, motions for compassionate release could only be brought to the Court by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A) (2002). However, after the December 2018 passage of the First Step Act, defendants may now bring their own motions for compassionate release after exhausting administrative remedies within the Bureau of Prisons or by waiting 30 days after receipt of their request by the warden of defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A) (2018).

A defendant may be eligible for compassionate release: (1) if the Court finds "extraordinary or compelling reasons" to warrant a sentence reduction; or (2) if the defendant is at least 70 years old, has served at least 30 years in prison pursuant to a sentence imposed for the offense for which the defendant is currently imprisoned, and the defendant is determined not to pose a risk of danger to the community. 18 U.S.C. § 3582(c)(1)(A). Under either eligibility prong, the Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The

Sentencing Guidelines instruct that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553 when deciding a motion for compassionate release, and that the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act. U.S.S.G. § 1B1.13.

**B.  Exhaustion or Lapse of 30 days**

Defendant has exhausted his administrative remedies and waited 30 days after submitting his request to the warden of the institution where he is housed. However, the Government objects to the Court's authority to rule on the motion because Defendant's case is on appeal in the Ninth Circuit. ECF No. 477 at 3 (citing *United States v. Campbell*, No. 6:06-CR-06105 EAW, 2020 WL 1958486, at *2 (W.D.N.Y. Apr. 21, 2020) ("Court concludes that it lacks jurisdiction over Defendant's pending motions for compassionate release" under 18 U.S.C. § 3582(c)(1)(A))); *see also United States v. Cardoza*, 790 F.3d 247, 248 (1st Cir. 2015) ("a district court does not have jurisdiction to enter a sentence modification order under § 3582(c)(2) while an appeal of that sentence is pending").

As the Government observes, according to Federal Rule of Criminal Procedure 37(a), if the court lacks authority to grant the motion because an appeal is pending, the court may defer considering the motion, deny the motion, or state

that it would grant the motion if the court of appeals remands for that purpose. Accordingly, the Court will consider the motion through the lens of Rule 37(a).

### C.  Extraordinary and Compelling Reasons

Defendant argues that his medical condition presents an extraordinary and compelling reason to justify a reduction in sentence. ECF No. 474.  The First Step Act did not define what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the Sentencing Commission's policy statements when deciding compassionate release motions.  18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement on sentence reduction mirrors the language of the compassionate release statute, but it has not yet been updated to reflect the procedural changes implemented by the First Step Act. U.S.S.G. § 1B1.13.  "While that particular policy statement has not yet been updated to reflect that defendants (and not just the [Bureau of Prisons ("BOP")]) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019) (gathering cases). The sentence reduction policy statement outlines four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence

ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE ~ 5

reduction: (1) the defendant suffers from a medical condition that is terminal or substantially diminishes the defendant's ability to provide self-care in a correctional environment; (2) the defendant is at least 65 years old, is experiencing a serious deterioration in health due to the aging process, and has served at least 10 years or 75% of his or her term of imprisonment; (3) family circumstances involving the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner; or (4) other reasons, other than or in combination with the other listed circumstances, that are extraordinary and compelling. U.S.S.G. § 1B1.13, Application Note 1.

Defendant argues that at age 67, with asthma and COPD, he is highly susceptible to coronavirus risks. Significantly, Defendant does not allege that he is currently incapacitated and admits that he is receiving medical care for his illnesses. Defendant seems to emphasize his current diagnosis of Stage IV metastatic prostate cancer with a 24-36 month prognosis warrants immediate release. However, at the time of sentencing, over 20 months ago, Defendant represented to the Court that his prognosis was then just 18 months. ECF No. 462 at 70. Defendant's prognosis has thus substantially improved since sentencing.

Whether Defendant is housed in prison or detained at home, the virus continues to spread throughout society. Fear of the virus does not warrant

immediate release.  In this case, there are no extraordinary and compelling reasons for a reduction in sentence.

**D. Factors under 18 U.S.C. § 3553(a)**

18 U.S.C. § 3582(c) and the Sentencing Guidelines instruct that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release.  18 U.S.C. § 3553(a) provides:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)  the need for the sentence imposed—
>    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B)  to afford adequate deterrence to criminal conduct;
>    (C)  to protect the public from further crimes of the defendant; and
>    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3)  the kinds of sentences available;
> (4)  the kinds of sentence and the sentencing range established for—
>    (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>      (i)  issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>      (ii)  that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>    (B)  in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States

        Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—
    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

At the time of the original sentencing, the Court fully considered these factors. Once again, the Court has fully considered these factors in light of the developments since sentencing. Of particular note is the nature and circumstances of the offense in this case. This was not a simple mistake involving a small sum of money. Defendant promised financing to his victims of over $86 million and took over $2 million dollars from them. This was an egregious white collar crime scheme. The Court is obligated to protect the public from defendant's fraudulent conduct. The sentence the Court imposed was "sufficient, but not greater than necessary," to comply with the purposes of § 3553(a), including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense and to afford adequate deterrence to this criminal

conduct. Even with recent developments, the sentence imposed remains sufficient but not greater than necessary to comply with the purposes of sentencing.

### E. Danger to any Person and the Community under 18 U.S.C. § 3142(g)

Defendant contends that he poses no risk to the community because he can be supervised and prohibited from opening financial accounts or credit lines that would allow any type of activity akin to his offense. The Court disagrees and finds otherwise. Defendant's egregious fraudulent conduct comprising the offense for which he was convicted shows he cannot be trusted. He presents a serious financial risk to the public. Defendant fraudulently induced multiple victims to part with over $2,000,000. The $2,000,000 has not been recovered. Defendant took the victims' money, shared it with his co-conspirators and spent it on his own needs and desires.

Also demonstrating Defendant's lack of trust and ability to be supervised is Defendant's conduct while under pretrial supervision by the United States Probation and Pretrial Service Office. Defendant was specifically ordered to "refrain from employment or any other activity related to loans or lines of credit pertaining to other individuals, or any activity that involves handling or controlling or access to other individuals' funds, assets or credit." ECF No. 39 at ¶ 31. Yet, Defendant allegedly contacted the owner of Storm 24 in August 2016, to inquire if there were any business opportunities for them to pursue. Ultimately, Defendant

was engaged to work on a real estate reclamation project in Oklahoma City. As a result of his work on the project, Defendant connected Storm 24 with a financial broker who referred that company to Silver Arch for a loan. The project in Oklahoma City had yet to begin due to financing issues. The owner estimated the project was worth $3,500,000, and Defendant would be paid 5 percent of that sum for his work on the project. The owner indicated that Defendant had been living in hotels in the Los Angeles, California, area since they started conducting business together in September 2016. The owner paid Defendant's hotel stay until September 2017. He estimated he paid approximately $70,000 to $80,000 in hotel bills for Defendant and has also provided him $8,000 to $9,000 for living expenses. Defendant did not disclose his current legal issues with the owner of Storm 24. Upon learning of his indictment in the instant federal matter, the owner of Storm 24 terminated his business relationship with Defendant in September 2017.

The supervising pretrial services officer in the Central District of California advised that Defendant represented to her that he was acting as an independent insurance adjuster for the owner of Storm 24 while under supervision. In lieu of pay, Mr. Thompson stated his hotel bills were covered by the owner of Storm 24. In October 2017, Defendant reported to the supervising USPO that he was hired by another construction company as an insurance adjuster.

1 | The United States contended Defendant violated the conditions of his
2 | supervision because he was instrumental in promoting a loan of some millions of
3 | dollars to an Oklahoma City apartment building owner, which would allow the
4 | building owner to hire the contractor Defendant was associated with to repair and
5 | rehabilitate the apartment building.
6 | Defendant challenged the allegations in the petition; however, the Court
7 | found by clear and convincing evidence that while on release, Defendant violated
8 | his pretrial release condition No. 31, and ordered him detained. ECF No. 219.

## CONCLUSION

Although Defendant's health condition is unfortunate, the Court declines to exercise its discretion to reduce Defendant's sentence because extraordinary and compelling reasons do not warrant such a reduction.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Expedite, ECF No. 476, is **granted**.

2. Defendant's Motion for Sentence Reduction, ECF No. 474, is **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** June 2, 2020.



THOMAS O. RICE
Chief United States District Judge